IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KENYONA EUBANKS, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) No. |
| v. | )<br>) JURY DEMANDED |
| AURORA HEALTH CARE, INC., | )<br>)<br>)<br>) |
| Defendant. | ) |

# COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiff, Kenyona Eubanks, individually and on behalf of all other persons similarly situated, through her undersigned counsel, complains against Defendant Aurora Health Care, Inc. ("Aurora" or "Defendant"), as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This is a collective and class action for all earned regular and overtime wages brought by hourly paid employees. Plaintiff's claims arise under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and Chapter 109 of the Wisconsin Statutes.

2. Aurora operates, owns and controls hospitals and health care facilities in Wisconsin.

3. Aurora has a wage and hour policy and practice that rounds Plaintiff's and similarly situated hourly employees' clock in and clock out times to the advantage of Aurora and to the detriment of Plaintiff and all other similarly situated hourly employees.

4. Aurora's time clock rounding policies and practices violate the FLSA and Chapter 109 of the Wisconsin Statutes and result in the underpayment of overtime wages.

5. Aurora's wage violations will be shown from, among other things, a comparison of the face of Defendant's employees' pay stubs to Defendant's own time records for those same employees.

6. Aurora's rounding practices are perfectly suitable to collective and class action treatment.

7. Plaintiff brings her FLSA overtime claims as a collective action pursuant to 29 U.S.C. 216(b) on behalf of hourly employees who worked for Defendant in the United States. Plaintiff brings her Wisconsin statutory unpaid wage claims as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Wisconsin hourly employees.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. This Court has supplemental jurisdiction over all class claims in this action under 28 U.S.C. § 1367.

## THE PARTIES

10. Plaintiff is an individual who Defendant employed from approximately May 2014 to August 2019 as an hourly, non-exempt employee.

11. Plaintiff worked as a medical assistant floater for Defendant. During her employment with Defendant as a medical assistant floater, Plaintiff worked at many Aurora locations, including Aurora Health Center at 5818 W. Capitol Drive, Milwaukee, WI; Aurora St. Luke's Medical Center at 2900 W. Oklahoma Avenue, Milwaukee, WI; Aurora West Allis Medical Center at 8901 W. Lincoln Ave., West Allis, WI; and Aurora Sinai Medical Center at 945 N. 12th Street, Milwaukee, WI. Plaintiff resides in and is domiciled within this judicial

district.

12. Defendant Aurora Health Care, Inc. is a Wisconsin nonprofit corporation that is registered to and that does transact business in Wisconsin.

13. Defendant employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and Wis. Stat. §109.01(1r).

14. At all relevant times, Defendant was an "employer" of Plaintiff and other similarly situated persons, as that term is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and Wis. Stat. §109.01(2).

## FACTUAL ALLEGATIONS

### A. *Aurora's Rounding Policy and Practice*

15. Aurora has used a timekeeping system for its hourly employees called Kronos.

16. When an Aurora hourly employee punches in or out for work at any location, Kronos collects, tracks, monitors, sorts and maintains their clock in and clock out times.

17. Kronos collects, tracks, monitors, sorts and maintains the clock in and clock out times of Aurora hourly employees regardless of where the hourly employee works.

18. Additionally, Kronos collects, tracks, monitors, sorts and maintains the clock in and clock out times of hourly employees regardless of whether an hourly employee clocks in and out using a badge reader, a computer or a phone.

19. Defendant designed and configured Kronos to round the clock in and clock out times of Defendant's hourly employees.

20. Specifically, Aurora designed and configured Kronos to round the clock in and clock out times for hourly employees when they clock in or out within seven minutes of the top or bottom of each hour.

21. When the employee clocks in or out within seven minutes of the scheduled start time, Aurora pays its hourly employees based on the rounded time, not the actual and complete punch times.

22. Aurora's rounding policy which applied to all non-exempt employees regardless of whether they are direct employees or placed at Aurora through a temporary staffing agency is as follows: when an employee clocks in within seven minutes before or after the scheduled start time, Aurora calculates the time work started for purposes of paying wages by rounding the clock in time to the employee's scheduled start of work time.

23. When an employee clocks out within seven (7) minutes before or after their scheduled end time, Aurora calculates the time work ended for purposes of paying wages by rounding the clock out time to the employee's scheduled end of work time (the "Rounding Policy").

24. For example, if Aurora schedules an hourly employee to start work at 9:00 a.m. and the employee clocks in to work at 8:55 a.m., Aurora has programmed and configured Kronos, consistent with the Rounding Policy, to round away the five minutes worked from 8:55 a.m. to 9:00 a.m. and Aurora does not pay the employee for that time.

25. If Aurora schedules an hourly employee to stop work at 5:00 p.m. and the employee clocks out of work at 5:07 p.m., Aurora has programmed and configured Kronos, consistent with the Rounding Policy, to round away the seven minutes worked from 5:00 p.m. to 5:07 p.m. and Aurora does not pay the employee for that time.

26. Aurora, consistent with the Rounding Policy, uses Kronos to round away and not pay employees for time recorded as worked where that time is seven minutes or less before a scheduled work start time.

27. Aurora, consistent with the Rounding Policy, uses Kronos to round away and not pay employees for time recorded as worked where that time is seven minutes or less before a scheduled work end time.

28. Plaintiff and the putative class and collective performed compensable work activities while "on the clock" and during the time that Aurora rounded away pursuant to its Rounding Policy.

29. Under Defendant's Rounding Policy, Defendant systematically rounds time off both ends of its hourly employees' work shift to the advantage of Aurora and to the financial harm and underpayment of its hourly employees.

30. As a direct consequence of the Rounding Policy, Aurora has been systematically underpaying its employees significant sums of wages.

31. The Rounding Policy results in Aurora failing to pay hourly employees accurately and fairly over time, to Aurora's financial gain and the hourly employees' financial detriment.

32. The aggregate sum of unpaid wages for all employees based upon the Rounding Policy is substantial on a daily, weekly, and an annual basis. This is particularly so because Defendant employed hundreds if not thousands of hourly employees during the applicable statutory recovery periods.

33. If Aurora paid its hourly employees on a continuous workday basis – paid from actual punch time in to actual punch time out – its hourly employees would be paid more wages.

34. Additionally, Defendant has personnel and disciplinary policies that further ensure that the Rounding Policy will work to Aurora's advantage and its hourly employees' detriment. For example, Defendant's tardiness and punctuality policies and practices do not allow hourly employees to freely or frequently be tardy or late to work.

35. Under Defendant's tardiness and punctuality policies, hourly employees who are tardy may be subject to discipline up to and including termination.

36. The Plaintiff and similarly situated hourly employees generally begin working before the start of their scheduled shift time, as opposed to after their scheduled start time.

37. Under Aurora's policies and practices, once an hourly employee clocks into work, they are considered by Defendant to be "on the clock" and working.

38. Under Aurora's policies and practices, Aurora requires supervisors to review for accuracy and approve hourly employees' timecards.

39. Aurora's policy and practice requires supervisors to approve the rounded hours on hourly employees' timecards. Aurora's policy and practice requires supervisors to approve the rounded work hours of hourly employees for purposes of calculating the hourly employees' payroll.

40. Aurora's payroll policies and practices provide that an hourly employee cannot be paid unless a supervisor has reviewed and approved an hourly employee's timecard.

41. Aurora does not discipline its hourly workers who clock in seven minutes or less before their scheduled start time.

**B.**   ***Defendant's Rounding Rules Are Applied to All Hourly Employees***

42. At all relevant times, Defendant has utilized an integrated time and attendance system for its hourly employees.

43. Regardless of which location or building where the hourly employees work, their clock in and clock out times are processed, adjusted, maintained, and kept in a common timekeeping system that is Defendant's enterprise-wide timekeeping system.

44. At all relevant times, Defendant's timekeeping system had rounding rules that Defendant applied to its hourly employees' clock in and clock out times.

45. At all relevant times, Defendant's timekeeping system rounded the clock in and clock out times of its hourly employees, regardless of which location or building the hourly employees worked and regardless of the job title or duties and responsibilities.

46. At all relevant times, Defendant's timekeeping system rounded the clock in and clock out times of its hourly employees, regardless of whether an hourly employee clocked in by using a badge reader, phone or computer.

47. At all relevant times, there has been no category of hourly employees whose clock in and clock out times were not subject to Defendant's rounding policies and practices described herein.

C. *Defendant's Centralized Payroll Department*

48. Defendant operates a centralized payroll department.

49. At all relevant times, Defendant's payroll department receives, sorts and processes the clock in and clock out times for Defendant's hourly employees.

50. Defendant's payroll department possesses, controls and configures Kronos and its timekeeping system to round the clock in and clock out times of Defendant's hourly employees.

51. Defendant's payroll department uses the rounded clock in and clock out times to calculate the payroll and compensation for Defendant's hourly employees, regardless of where an employee works or the job duties they perform.

52. On information and belief, Defendant did not at any time audit or investigate its rounding policies and practices to determine if its rounding policies and practices are fair and equitable to its employees.

53. On information and belief, Defendant did not at any time audit or investigate its rounding policies and practices to determine if its rounding policies and practices unfairly benefit Defendant to the employees' detriment over a period of time, whether that period of time is, for example, one month, three months, six months, 12 months or longer.

54. On information and belief, Defendant has never undertaken a review of any meaningful type to assess whether its rounding policies and practices unfairly deprive its hourly employees of wages and compensation.

### E. *Defendant Knew of and Assented to the Unpaid Work*

55. Defendant's policy and practice requires and/or permits employees to work once they have clocked in and are "on the clock."

56. Through its own rounding policies and practices and its own attendance and punctuality policies and practices, Defendant knew and was aware that its hourly employees performed work activities after they clocked in and were "on the clock."

57. Defendant knowingly required Plaintiff and the similarly situated individuals to perform unpaid work once they clocked in and were "on the clock."

58. Indeed, Defendant does not allow its employees to clock in and be "on the clock" but not work. The supervisor of the hourly employees is in part responsible for making sure employees begin work immediately after they clock in.

59. By knowing of, permitting and/or requiring Plaintiff and similarly situated hourly employees to perform work activities once they clocked in and were "on the clock", Defendant assented to them performing the work that is ultimately rounded away under its rounding policies and practices.

## COLLECTIVE ACTION ALLEGATIONS

60. Plaintiff bring Count I of this Complaint as a collective action on behalf of themselves and all other current and former hourly employees of Defendant whose clock in and clock out times were rounded as described herein.

61. Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons:

> All persons who worked for Defendant as hourly employees at any time between August 14, 2017 and the present whose clock in and clock out times were rounded to their detriment.

62. Plaintiff and the other employees are similarly situated to one another because they are hourly employees whose clock in and clock out times were all subject to the same rounding policy and practice.

63. Plaintiff and the other hourly employees are similar because Defendant did not pay them for all time they actually worked.

64. Plaintiff and the other hourly employees are similar because Defendant did not pay them for the work time that Defendant rounded away under its rounding policy and practice.

65. There are questions of law or fact common to the employees described in paragraph 61.

66. Plaintiff is similarly situated to the employees described in paragraph 61, as Plaintiff's claims are typical of the claims of those persons.

67. Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 61.

68. This is not a collusive or friendly action. Plaintiff has retained counsel experienced in complex employment litigation, and Plaintiff and her counsel will fairly and adequately protect

the interests of the persons described in paragraph 61.

69. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

70. At all relevant times, Defendant employed Plaintiff and the persons described in paragraph 61.

## CLASS ACTION ALLEGATIONS

71. Plaintiffs bring Count II as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all other current and former hourly employees of Defendant who Defendant required and/or permitted to perform the work described herein without pay.

72. With respect to Plaintiff's Wisconsin state law claims, Plaintiff seeks to represent a class that is comprised of and defined as:

> All persons who worked for Defendant as hourly employees in Wisconsin at any time between August 14, 2018 and the present, whose clock in and clock out times were rounded to their detriment (the "Wisconsin Class").

73. This action is being brought as a class action pursuant to Fed. R. Civ. P. 23, because the Wisconsin Class is so numerous that joinder of all class members is impracticable.

74. Plaintiff and the other employees are similarly situated to one another because they were all subject to the Rounding Policy.

75. Plaintiff and the other employees are similar because Defendant did not pay them for all time they actually worked.

76. Plaintiff and the other employees are similar because Defendant did not pay them for the work time that Defendant rounded away under the Rounding Policy.

77. Plaintiff and the members of the Wisconsin Class have been detrimentally affected by the Rounding Policy.

78. Plaintiff and the members of the Wisconsin Class have been detrimentally

10
Case 2:20-cv-01253-JPS Filed 08/14/20 Page 10 of 16 Document 1

affected by Defendant's failure to pay all earned wages to Plaintiff and the class members.

79. Furthermore, members of the Wisconsin Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

80. The issues involved in this lawsuit present common questions of law and fact; these common questions of law and fact predominate over the variations that may exist between members of the Class, if any.

81. Plaintiff and the members of the Wisconsin Class, as well as Defendant, have a commonality of interest in the subject matter and the remedy sought.

82. Plaintiff is able to fairly and adequately represent and protect the interests of the members of the Wisconsin Class.

83. If individual actions were required to be brought by each member of the Wisconsin Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the members of the Wisconsin Class, to the Court, and to Defendant. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the Class is entitled.

84. Plaintiff has retained counsel experienced in complex employment litigation and in class action litigation. Plaintiff's Counsel are competent and experienced in litigating large wage and hour and other employment class actions.

85. Plaintiff and her counsel will fairly and adequately protect the interest of FLSA collective and Wisconsin Class.

### **COUNT I – FLSA**
**(Failure to Pay Overtime Wages)**

86. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 70 as paragraph 86 of this Count I.

87. Plaintiff, individually and on behalf of the collective described in paragraph 61, assert claims for unpaid overtime pursuant to the FLSA.

88. At all times relevant hereto, Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

89. At all times relevant hereto, Defendant was an "employer" of Plaintiff and the members of the collective described in paragraph 61 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

90. At all times relevant hereto, Plaintiff and the members of the collective described in paragraph 61 were "employees" of Defendant as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

91. Plaintiff and the members of the collective described in paragraph 61 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

92. At all times relevant hereto, Defendant's failure to pay Plaintiff and the members of the collective described in paragraph 61 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

   a. Defendant knew that the FLSA required it to pay employees time and one-half for all time worked over 40 hours in a week;

   b. Defendant failed to maintain true and accurate time records;

   c. Defendant knew that the Rounding Policy improperly rounded its hourly employees time for purposes of calculating wages owed to the advantage of Aurora and to the detriment of its employees; and Defendant never performed an audit or otherwise investigated whether the Rounding Policy was neutral.

93. As a direct and proximate result thereof, Plaintiff and the members of the collective described in paragraph 61 are due unpaid back wages and liquidated damages, pursuant to 29

U.S.C. § 216.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, demand judgment against Defendant and in favor of Plaintiff and all others similarly situated in a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

- d. Declare and find that the Defendant committed one or more of the following acts:
    - i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party Plaintiff; and
    - ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party Plaintiff.
- e. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;
- f. Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party Plaintiff;
- g. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;
- h. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;
- i. Grant leave to add additional Plaintiff by motion or any other method approved by the Court to conform with the proofs at trial; and
- j. Grant such further relief as the Court deems just and equitable.

**COUNT II – WAGE VIOLATION UNDER CHAPTER 109 OF WISCONSIN STATUTES**
**(Failure to Pay Earned Regular and Overtime Wages)**

93. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 59 and 71 through 85 as paragraph 93 of this Count II as if fully set forth herein.

94. Plaintiff, individually and on behalf of all others similarly situated, brings this Count II to recover from Defendant unpaid wages, overtime compensation, statutory penalties, attorneys' fees, and costs, pursuant to Chapter 109 of the Wisconsin Statutes.

95. At all times relevant, and at Defendant's request, Plaintiff and the members of the putative Wisconsin Class performed work for Defendant.

96. As set forth supra, Defendant assented to pay Plaintiff and the members of the putative Wisconsin Class at an agreed-upon hourly rate at or in excess of the applicable minimum wage, for all work Defendant permitted and/or required.

97. As set forth supra, Defendant assented to the hourly employees performing the work described above by, among other means, Defendant's knowledge and awareness of the pre and post-shift work described herein.

98. Defendant regularly observed, without objection or negative comment, the record and documentation of reflecting that Plaintiff and the members of the putative Wisconsin Class performed work prior to the start of their scheduled shift time, and after the end of their scheduled shift time.

99. During their employment with Defendant, Plaintiff and similarly situated Wisconsin employees had an agreement with Defendant to be compensated for all time worked at the rates agreed to by the parties. Defendant did not pay Plaintiff or similarly situated Wisconsin employees for all hours worked at the rates agreed to by the parties as described herein.

100. Plaintiff and the putative Wisconsin Class were entitled to be paid for all time worked at the rate agreed to by the parties.

101. Defendant has failed to pay Plaintiff and the members of the putative Wisconsin Class the full amount due for all time worked on their regularly scheduled paydays, including but not limited to their final compensation, because Defendant did not pay them for the work described herein, in violation of Wisconsin Statutes §109.03.

102. Defendant has failed to pay Plaintiff and the putative Wisconsin Class the full

amount for all hours worked because of the improper practices described herein.

103. Wisconsin Statutes § 109.01(3) defines wages as "remuneration payable to an employee for personal services, including salaries, commissions, holiday and vacation pay, overtime pay, severance pay or dismissal pay, … bonuses and any other similar advantages agreed upon between the employer and the employee or provided by the employer to the employees as an established policy."

104. Wisconsin Statutes §109.03(1) states, in relevant part: "Every employer shall as often as monthly pay to every employee engaged in the employer's business, … all wages earned by the employee to a day not more than 31 days prior to the date of payment. Wisconsin Statutes §109.03(2) provides that "Any employee … not having a written contract for a definite period, who quits employment or who is discharged from employment shall be paid in full by no later than the date on which the employee regularly would have been paid under the employer's established payroll schedule or the date of payment required under sub. (1), whichever is earlier."

105. Defendant violated Wisconsin Statutes §§109.03(1) and (2) by regularly and repeatedly failing to properly compensate Plaintiff and the putative Wisconsin Class members for the actual time they worked each week within the required timeframe and by failing to properly compensate Plaintiff and the putative Wisconsin Class their rightful wages by the next scheduled payday after their separation.

106. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff and the putative Wisconsin Class have suffered and will continue to suffer lost wages and other damages.

WHEREFORE, Plaintiff and the members of the Wisconsin Class pray for a judgment against Defendant as follows:

a. That the Court determine that this Count II may be maintained as a class action;

b. A judgment in the amount of all back wages due;

c. Statutory damages pursuant to the formula set forth in Wis. Stat. §109.11(2);

d. Reasonable attorneys' fees and costs incurred in filing this action; and

e. Such other and further relief as this Court deems appropriate and just.

Dated: August 14, 2020

Respectfully submitted,

/s/ Thomas M. Ryan
One of Plaintiffs' attorneys

James X. Bormes
Catherine P. Sons
Law Office of James X. Bormes, P.C.
8 South Michigan Avenue
Suite 2600
Chicago, Illinois 60603
(312) 201-0575
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Thomas M. Ryan
Law Office of Thomas M. Ryan, P.C.
35 East Wacker Drive
Suite 650
Chicago, Illinois 60601
(312) 726-3400
tom@tomryanlaw.com

Patrick J. Schott
Schott, Bublitz & Engle, S.C.
640 West Moreland Boulevard
Waukesha, WI 53188
(262) 827-1700
pschott@sbe-law.com